**Slip Op. 07-189**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Before:  Nicholas Tsoucalas, Senior Judge

_____
                                          :
AECTRA REFINING AND MARKETING INC.,       :
                                          :
        Plaintiff,                        :
                                          :
    v.                                    :  Court No.:  04-00354
                                          :
UNITED STATES,                            :
                                          :
        Defendant.                        :
_____ :

                                      December 28, 2007

[Held:   Plaintiff's  Motion  for  Summary  Judgment  is denied.
Defendant's Motion for Summary Judgment is granted.   Judgment
entered for the Defendant.]

Phelan & Mitri (Michael F. Mitri) for Aectra Refining and Marketing
Inc., Plaintiff.

Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E.
Davidson, Director; Todd M. Hughes, Assistant Director; Commercial
Litigation Branch, Civil Division, United States Department of
Justice (Tara K. Hogan); of counsel:  Richard McManus, Office of
the Chief Counsel, United States Bureau of Customs and Border
Protection, for United States, Defendant.


                            **OPINION**


**TSOUCALAS, Senior Judge**:  This matter is before the court on cross-

motions for summary judgment pursuant to USCIT R. 56.  Plaintiff

Aectra Refining and Marketing Inc. ("Aectra") seeks drawback[1] of

---

[1]     "Drawback means a refund or remission, in whole or in
part, of a customs duty, fee or internal revenue tax which was
imposed on imported merchandise[.]"  19 C.F.R. § 191.2(i).

Harbor Maintenance Taxes ("HMTs")[2], Merchandise Processing Fees ("MPFs")[3] and Environmental Taxes ("ETs")[4] it paid on imported merchandise designated under the drawback entries at bar and seeks reliquidation of same.  Defendant United States Bureau of Customs and Border Protection ("Customs") argues that Aectra's drawback claim was properly denied and seeks an order dismissing the case.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000).

## STANDARD OF REVIEW

On a motion for summary judgment, the court must determine whether there are any genuine issues of fact that are material to the resolution of the action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine if it might

---

[2]   The HMTs are a tax on port use enacted pursuant to the Water Resources Development Act of 1986, Pub.L. No. 99-662, Title XIV § 1402, 100 Stat. 4266 (1986), 26 U.S.C. § 4461.

[3]   The MPFs are a fee assessed on all imports pursuant to 19 U.S.C. § 58c(a)(9).

[4]   The ETs are an excise tax imposed on crude oil received at a United States refinery and on petroleum products entered into the United States for consumption, use, or warehousing.  See 26 U.S.C. § 4611.

affect the outcome of the suit under the governing law. See id. Accordingly, the court may not decide or try factual issues upon a motion for summary judgment. See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988). When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law. See USCIT R. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

### I. Background

Plaintiff Aectra imported certain petroleum products into the United States, then later exported "substitute finished petroleum derivatives." See Pl.'s Mot. Summ. J. ("Pl.'s Mot.") at 1. At issue are the ten claims for substitution drawback of finished petroleum derivatives Aectra filed with Customs during the period August 1997 through June 1998. See Pl.'s Statement Material Facts ("Aectra's Facts") ¶¶ 1, 2. All ten drawback claims sought drawback of Column I general customs duties only. See Pl.'s Mot. at 1.

On or about November 28, 2003, Customs liquidated Aectra's drawback entries and approved drawback refunds for the full amounts requested by Aectra. See Aectra's Facts ¶¶ 3, 4. On or about

February 2, 2004, plaintiff timely filed a protest pursuant to 19 U.S.C. § 1514 contesting and requesting, for the first time, Customs' failure to issue drawback of the HMTs and MPFs imposed on the merchandise at issue. See Appendix Def.'s Resp. Summ. J. at 1. On or about February 6, 2004, Customs denied plaintiff's protest. See Aectra's Facts ¶ 9. On or about July 23, 2004, plaintiff commenced the instant action contesting Customs' denial of its protest and requesting drawback of HMTs, MPFs and ETs (collectively "taxes and fee"). See id. ¶ 10; Complaint.

## II. Statutory Background

Pursuant to subsection 313(p) of the Tariff Act of 1930, as amended ("Act"), 19 U.S.C. § 1313(p), importers of certain petroleum products meeting the statutory requirements are entitled to receive drawback of the full amount of duties paid, less one percent, if they export "substitute finished petroleum derivatives." See North American Free Trade Agreement Implementation Act ("NAFTA Act"), Pub.L. No. 103-182, 107 Stat. 2192, 2194-95 (1993). As enacted by the NAFTA Act, "[a] drawback entry and all documents necessary to complete a drawback claim . . . shall be filed or applied for, as applicable, within three years after the date of exportation or destruction of the articles on which drawback is claimed." 19 U.S.C. § 1313(r)(1).

In 1999, 19 U.S.C. § 1313(p)(4) was amended so as to provide

that the drawback amount payable for non-manufacturing claims shall be that attributable to the imported article under 19 U.S.C. § 1313(j) governing unused merchandise drawback.  See Miscellaneous Trade and Technical Corrections Act of 1999 ("1999 Trade Act"), Pub.L. No. 106-36, § 2420(d), 113 Stat. 127, 178-79 (1999).  At that time, 19 U.S.C. § 1313(j) permitted drawback "[i]f imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law because of its importation" was either 1) not used within the United States or 2) "commercially interchangeable" with the imported merchandise, before being subsequently exported or destroyed.  See 19 U.S.C. § 1313(j).  The 1999 amendment of 19 U.S.C. § 1313(p)(4) suspended the three-year time limitation to complete drawback claims set forth in 19 U.S.C. § 1313(r)(1) for drawback claims filed within six months after the date of enactment, June 25, 1999.  See 1999 Trade Act, Pub.L. No. 106-36, § 2420(e), 113 Stat. 127, 179 (1999).

In Texport Oil Co. v. United States ("Texport CAFC"), the United States Court of Appeals for the Federal Circuit ("CAFC") held that the "because of its importation" language of 19 U.S.C. § 1313(j) excluded from drawback taxes and fees that do not discriminate against imports.  See 185 F.3d 1291 (Fed. Cir. 1999). Thus, the CAFC found that HMTs are applied indiscriminately and are ineligible for drawback, but found that MPFs, which discriminate against imports, are eligible for drawback.  See id. Subsequent to

the 1999 amendment of 19 U.S.C. § 1313(p)(4), this court held in George E. Warren Corp. v. United States ("Warren CIT"), 26 CIT 486, 201 F. Supp. 2d 1366 (2002), that Texport CAFC was controlling in finding that HMTs and ETs were not eligible for drawback. The CAFC affirmed Warren CIT finding that a reversal of Texport CAFC was not warranted. See Warren v. United States ("Warren CAFC"), 341 F.3d 1348 (Fed. Cir. 2003).

In December 2004, 19 U.S.C. § 1313(j) was further amended to make eligible for drawback of "duty, tax, or fee" imposed under Federal law "upon entry or importation" to be applicable to any "drawback claim filed on or after [the date of the Act's enactment] and to any drawback entry filed before that date if the liquidation of the entry is not final on that date." See Miscellaneous Trade and Technical Corrections Act of 2004 ("2004 Trade Act"), Pub.L. 108-429, Title I, § 1557 (a), (b), 118 Stat. 2579 (2004). The legislative history of the 2004 Trade Act reflects Congress' unequivocal intent to overturn Texport CAFC by the amendment. See S. Report 108-28, at 173 (noting that "allowing for drawback of the [HMTs] is consistent with original Congressional intent").

## III. Contentions of the Parties

### A. Aectra's Contentions

Aectra argues that it is entitled to drawback refund of HMTs, MPFs and ETs for the drawback entries at issue because it met the

statutory requirements for a 1313(p) drawback of substitute finished petroleum derivatives.  See Pl.'s Mot. at 7.  According to Aectra, it followed the applicable administrative procedures for the recovery of the taxes and fee at issue, and timely filed the relevant drawback claims less than three years after the date of export or re-filed during the six-month suspension period provided for in the 1999 Trade Act.  See id. at 8-9.

To support its claim, Aectra points to the language of the 2004 amendment authorizing 1313(j) drawback refund of taxes and fee imposed upon importation rather than because of importation applies to any drawback entry "filed before the date of the enactment if the liquidation of the entry is not final on that date."  See id. at 10.  Pursuant to this provision, Aectra contends that the amended 1313(j) is expressly applicable to the drawback entries at issue because their liquidation was not final on the date of the enactment based on timely protest.  See id. at 10-11.

Aectra concedes that it did not explicitly request the refund of the taxes and fee until the administrative protest filed in February 2004, but nevertheless takes the position that its claims were timely completed within the three-year period.  See id. at 11-12.  Relying on the Court of International Trade's opinion in Texport Oil Co. v. United States ("Texport CIT"), 22 CIT 118, 1 F. Supp. 2d 1393 (1998), Aectra contends that its initial drawback claims incorporated drawback of taxes and fee.  See id. at 14.

Aectra then cites to <u>Warren CIT</u> for the proposition that a drawback claimant that did not initially request a drawback refund of HMTs and ETs need not file a second drawback claim during the six-month "sunset" or "suspension" period provided for in the 1999 amendment. <u>See</u> <u>id.</u> 14-16.

Responding to Customs' position that Aectra's failure to include taxes and fee in its calculation of the amount of drawback due demonstrates that its claims cannot implicitly include drawback of taxes and fee, discussed <u>infra</u>, Aectra contends that there is no statutory requirement that a drawback claimant calculate the amount of drawback due within the three-year period. <u>See</u> Pl.'s Resp. Opp'n Def.'s Cross-Mot. Summ. J. ("Pl.'s Resp.") at 9. Aectra notes that the requirement for a claimant to submit a calculation of the amount of drawback due is not set out in 19 C.F.R. § 191.51(a)(1), the subsection defining a "complete claim," but in 19 C.F.R. § 191.51(b). <u>Id.</u> at 9-10. Aectra thus argues that the three-year time limit applies to (a)(1)'s completion requirement but not to (b)(1)'s calculation requirement. <u>See</u> <u>id.</u> at 10.

Moreover, Aectra's reading of 19 C.F.R. 191.51(b) (1998) requires a drawback claimant to calculate the amount of import duties due, not the amounts of taxes and fee. <u>See</u> <u>id.</u> at 11-13. Indeed, noting that 19 C.F.R. § 191.51(b) requires a drawback claimant to correctly calculate the amount of drawback due, Aectra contends that if it had included the amounts for taxes and fee in

its claims, the amounts would have exceeded 99% of duty paid, which Customs would have deemed incorrect. See id. at 13.

Aectra further contends that Customs misinterprets the effective date provision of the 2004 amendment. See id. at 17-23. The effective date provision, according to Aectra, specifically provides that the amendment apply "prospectively to filings of future drawback claims and retroactively to previously filed drawback entries where the liquidation of such entries were not final on the date of enactment." Id. at 19. In making that distinction between drawback claims and drawback entries, Aectra states that "Congress intentionally recognized a class of retroactive tax and fee refund requests that were not subject to the three-year rule, namely, those covered under previously filed drawback entries not subject to final liquidation." Id. at 22. Aectra explains that "it must be assumed that the 2004 Congress never intended the 3-year rule of 1313(r)(1) would operate as a time bar for the recovery of [taxes and fee] in a drawback claim filed prior to enactment, so long as the liquidation of the drawback entry underlying the claim was not final." Id. at 23. In Aectra's view, while the effective date provision of the 1999 amendment permitted claimants to file new 1313 (p) claims for the first time outside the three-year period, the retroactivity of the 2004 amendment is limited to previously filed drawback entries. See id.

In any event, Aectra argues that neither 19 U.S.C. § 1313(r)(1) nor the regulation which preceded it, 19 C.F.R. § 191.61, requires that a claimant calculate the amount of drawback due in order to complete a drawback claim.  See id. at 24-28.  As such, Aectra contends that, to the extent the regulation would impose a condition unwarranted by the statute, 1313(r)(1) "'cannot defeat a right which the act of Congress gives.'"  Id. at 27.  In addition, by requiring that claimants calculate the amount of drawback due, Aectra contends that Customs improperly attempted to delegate a ministerial function.  See id.

Finally, Aectra contends that Customs' Headquarter Rulings do not support its contention that a change in the amount claimed changes the scope of a drawback claim so as to constitute an amendment subject to the three-year time limitation of 1313(r)(1), and that those Headquarter Rulings are not entitled to Skidmore deference on the basis that they are not consistent, thorough or well-reasoned pronouncements of the law and regulations.  See id. at 29-31.

**B.  Customs' Contentions**

Customs contends that it properly denied Aectra's protest seeking drawback of taxes and fee because Aectra did not request them until more than three years had passed since export.  See Def.'s Resp. Pl.'s Mot. Summ. J. ("Def.'s Resp.") at 8.

Accordingly, Customs contends that Aectra's drawback claims are untimely pursuant to 19 U.S.C. § 1313(r)(1).  See id. at 9-11.

Customs disputes Aectra's assertion that its initial drawback claims incorporated requests for taxes and fee.  See id. at 11. According to Customs, Aectra's position is undercut by the requirement set forth in 19 C.F.R. § 191.51(b)(1) requiring drawback claimants to correctly calculate the amount of drawback due.  See id. at 12.  Customs states that Aectra did not include the amounts of HMTs and MPFs due in its calculations, and thus argues that Aectra's claims could not implicitly include drawback of those amounts.[5]  See id.

Customs also disputes that Texport CIT and Warren CIT support Aectra's position that its drawback requests implicitly included request for drawback of HMTs and MPFs.  See id. at 13.  Instead, Customs contends that Texport CIT is limited to "situations in which the underlying duty drawback claim is denied on other substantive grounds."  Id. at 14.  Warren CIT is also inapplicable, according to Customs, because it addressed "whether the drawback claimant's failure to claim explicit amounts of HMT and ET for drawback was a jurisdictional bar to bringing suit in this Court."

_____

[5]     Customs notes that Aectra's protest only sought drawback of HMTs and MPFs.  Aectra did, however, seek drawback of ETs in its Complaint.  Since both the protest and the Complaint were filed beyond the three-year period, the court finds the distinction immaterial to this case.

Id. at 15.   According to Customs, Warren CIT "did not analyze or decide the issue here: whether a drawback claim of HMT and MPF is untimely when it is not filed within three years of export."   Id.

Customs next argues that Aectra did not and could not "perfect" or "amend" its claim by filing a protest.  See id. at 16. According to Customs, even if Aectra could, it did not submit with its protest an amended claim or calculation of HMTs and MPFs amounts, and therefore failed to perfect its claim.  Id.  Customs however contends that Aectra could not have perfected or amended its drawback claims by changing the scope of its original claim pursuant to 19 C.F.R. § 191.52(b).  See id. at 16-17.  First, Customs claims that only Customs can initiate the perfection process.  See id. at 17.  Second, Customs contends that addition of more fees and duties to be included in the drawback claim is a substantive change and that "Customs has consistently interpreted these regulations to preclude making substantive changes to the drawback claim."  Id.  In support, Customs relies on Headquarter Rulings, which it argues are consistent with the regulations and therefore are owed deference.  See id. at 17-18.

Customs points to 19 C.F.R. § 191.52(c), which permits a drawback claimant to amend its claim prior to liquidation provided that the amendment is made within three years of the date of exportation or destruction of the articles which are the subject of the original drawback claim.  See id. at 18.  Customs argues that

in  enacting  19  C.F.R.  §  191.52(c)  it  intended  to  preclude amendments to drawback claims made outside the three-year period. See id. at 19.  According to Customs, drawback claims may not be amended once entries have been liquidated, but liquidated claims may be perfected in a protest if made within the three-year period. Id.  Customs  believes  this  regulation  is  consistent  with  the statutory requirement that a complete claim be filed within three years of export.  Id.

Moreover,  according  to  Customs,  the  fact  that  Congress specifically provided for a six-month suspension of the three-year period  in  enacting  the  1999  amendment,  but  chose  not  do  so  in enacting  the  2004  amendment  evidences  Congress'  intent  not  to suspend the three-year time limitation.  See id. at 21.  Customs thus argues that the 2004 amendment permits "drawback claims which had timely included HMT and MPF whose liquidation was not final on [the date of enactment]."  Id.


IV.  Analysis

A.  The 2004 Trade Act Did Not Suspend The Time Limit Of 19 U.S.C. § 1313 (r)(1)

The parties apparently do not dispute that § 1557(a) of the 2004 Trade Act amending 19 U.S.C. § 1313(j) made HMTs, MPFs and ETs eligible for drawback.  The parties, however, disagree as to whether § 1557(b) of the 2004 Trade Act, the effective date

provision, is subject to the three-year time limitation to complete

drawback claims as set out in 19 U.S.C. § 1313(r)(1).

The effective date provision, § 1557(b) of the 2004 Trade Act,

provides that:

> the amendments made by this section shall take effect on
> the date of the enactment of this Act, and shall apply to
> any drawback claim filed on or after that date and to <u>any
> drawback entry filed before that date if the liquidation
> of the entry is not final on that date</u>. (emphasis added).

Section 1313(r)(1) of Title 19 of the United States Code

provides that:

> A drawback entry and all documents necessary to complete
> a drawback claim, including those issued by the Customs
> Service, shall be filed or applied for, as applicable,
> within 3 years after the date of exportation or
> destruction of the articles on which drawback is claimed,
> except that any landing certificate required by
> regulation shall be filed within the time limit
> prescribed in such regulation.  Claims not completed
> within the 3-year period shall be considered abandoned.
> No extension will be granted unless it is established
> that the Customs Service was responsible for the untimely
> filing.

Plaintiff Aectra argues that the plain language of the

effective date provision makes the 2004 amendment applicable to the

drawback claims at issue because liquidation of those entries were

not final as of the date of the enactment.  In addition, Aectra

argues that the effective date provision is not subject to the

three-year time limitation set forth in 19 U.S.C. § 1313(r)(1).

Customs contends that the effective date provision must be read in

conjunction with 19 U.S.C. § 1313(r)(1).

In construing an act of Congress, it is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act."  NTN Bearing Corp. of Am. v. United States, 26 CIT 53, 102-03, 186 F. Supp. 2d 1257, 1303 (2002) (citations omitted).  Rather, "each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole."  NTN Bearing, 26 CIT at 102-03, 186 F. Supp. 2d at 1303 (citing In re Nantucket, Inc., 677 F.2d 95, 98 (C.C.P.A. 1982)).  Employing this principle, the court finds that, the drawback statute, read as a whole, supports finding that § 1557(b) of the 2004 Trade Act is subject to the three-year time limitation of 19 U.S.C. § 1313(r)(1).  The fact that Congress knew how to suspend the time limitation because it did so in enacting the 1999 Trade Act, but chose not to provide for a suspension of the three-year time limitation in enacting the 2004 Trade Act further supports this reading.

Aectra's reliance on Texport CIT, 22 CIT 118, 1 F. Supp. 2d 1393, and Texport CAFC, 185 F.3d 1291, is misguided.  In Texport CIT, Customs had denied the importer's drawback claims for import duties.  22 CIT at 126-27, 1 F. Supp. 2d at 1401.  "Texport was therefore unable to protest the MPF and HMT fee drawback before Customs as a result of the duty drawback denial."  Id.  Under those particular circumstances, the court found that Texport's claim for HMTs and MPFs were implicit in the original claim.  See id.  In the

instant matter, Aectra had only sought drawback of import duties, and Customs had fully liquidated and refunded the full amount of drawback refund sought by Aectra.  Nothing prevented Aectra from making a timely request for drawback of taxes and fee.  Indeed, Customs liquidated Aectra's drawback entries for the exact amounts Aectra claimed.  Aectra then filed a protest seeking drawback refund of HMTs and MPFs, but failed to do so within the three-year period as provided in 19 U.S.C. § 1313(r)(1).  Texport CIT and Texport CAFC are thus inapplicable to the facts of this case, and Aectra's original drawback claims cannot be read to implicitly include drawback of taxes and fee.

Neither are Warren CIT, 26 CIT 486, 201 F. Supp. 2d 1366, and Warren CAFC, 341 F.3d 1348, dispositive of the issue.  In Warren CIT, the court held that it had jurisdiction over an action contesting the denial of a protest even if the drawback claimant had never claimed explicit amounts of HMTs and ETs in its original drawback request.  See Warren CIT, 26 CIT at 487-89, 201 F. Supp. 2d at 1369-70.  Central to the holding of Warren CIT was the fact that Congress had enacted the 1999 Trade Act amending 19 U.S.C. § 1313(p) and specifically provided for a six-month suspension of the three-year time limitation to complete drawback claims.  See id. at 1370.  By then "Customs had already ruled on the merits of [Warren's drawback for HMTs and ETs] in denying Warren's protest" and the court determined that "filing a second drawback claim would

have been futile."  Id.  Based on the unique circumstances of Warren CIT, the court found that the importer had exhausted administrative remedies and that there was an actual controversy fit for judicial review.  See id.  The facts of this case do not warrant such finding.

More importantly, it was unnecessary for the court in Warren CIT to consider whether Warren had complied with 19 U.S.C. § 1313(r)(1) since Warren filed its protest requesting drawback of HMTs and ETs well within the three-year time period to complete drawback claims.[6]  Accordingly, this court agrees with Customs and finds that Warren CIT and Warren CAFC are inapplicable to this case.  The court therefore holds that § 1557(b) of the 2004 Trade Act is subject to the three-year time limitation of 19 U.S.C. § 1313(r)(1) and finds that cases relied upon by Aectra do not require this court to hold otherwise.

**B.  The Drawback Regulations At Issue Are Valid**

The court next addresses Aectra's claim that it did indeed complete its drawback claims within the three-year period.  Noting that the drawback statute does not define what constitutes a completed drawback claim, Aectra cites to 19 C.F.R. § 191.51(a)(1),

---

[6]    Warren imported petroleum products on three different occasions during the period December 1995 to January 1996, and the protest seeking drawback of taxes and fee was filed on January 3, 1997.  See Warren CAFC, 341 F.3d at 1349.

which provides:

> Complete claim.  Unless otherwise specified, a complete
> drawback claim under this part shall consist of the
> drawback entry on Customs Form 7551, applicable
> certificate(s) of manufacture and delivery, applicable
> Notice of Intent to Export, Destroy, or Return
> Merchandise for Purposes of Drawback, applicable import
> entry number(s), coding sheet, unless the data is filed
> electronically, and evidence of exportation or
> destruction under subpart G of this part.

Aectra contends that it completed its drawback claims because it fulfilled the requirements of 19 C.F.R. § 191.51(a)(1) within the three-year period.

Customs does not dispute that Aectra timely filed the documents delineated in 19 C.F.R. § 191.51(a)(1).  However, it contends that Aectra's drawback claims for taxes and fee were incomplete because Aectra failed to comply with 19 C.F.R. § 191.51(b), which provides, inter alia, that "[d]rawback claimants are required to correctly calculate the amount of drawback due." Aectra, in turn, responds that the three-year time limitation does not apply to the requirement 19 C.F.R. § 191.51(b) to calculate the amount of drawback due and that, in any event, the regulation improperly imposes an obligation not required by the drawback statute.

In addition, Customs argues that pursuant to 19 C.F.R. § 191.52(c), Aectra cannot amend its drawback claims for taxes and fee beyond the three-year period.  Customs states that "[a]s part

of protest procedures, a claim may be perfected, but it may not be amended (insofar as amendment would result in a complete claim not being filed within the 3-year time limit)."  63 Fed. Reg. 10970, 10989 (March 5, 1998).  Citing HQ 227627 (July 20, 1999), Customs contends that "changing the basis on which drawback is claimed and the amount claimed, is a change in the scope of the claim, is not simply the submission of supporting evidence, and therefore is an untimely amendment of the claim, if done more than three years after the date of exportation or destruction."  Thus, Customs argues that Aectra impermissibly attempts to amend its drawback claim beyond the three-year period by way of a protest contrary to 19 C.F.R. § 191.52(c).

First, the court agrees with Customs that the three-year time limitation applies to the requirement of 19 C.F.R. § 191.51(b) to calculate the correct amount of drawback due.  Indeed, a reasonable reading of 19 C.F.R. § 191.51 requires that each subsection sets forth a component of a completed claim.  Furthermore, 19 C.F.R. § 191.51(e)(1) provides that "[a] completed drawback claim, <u>with all required documents</u>, shall be filed within 3 years after the date of exportation or destruction of the merchandise or articles which are the subject of the claim."  (Emphasis added).  A calculation of the amount of drawback due is certainly one of the documents required to be filed within the three-year period.  Because Aectra failed to provide Customs with calculations of the amounts of taxes and fee

due in any shape or form within the three-year period, the court finds that it did not timely complete its taxes and fee drawback claims.

Second, the court finds that 19 C.F.R. § 191.51 setting forth the requirements of a complete drawback claim and 19 C.F.R. § 191.52 governing amendment of a drawback claim are valid and are within Customs' statutory powers to promulgate and enforce the drawback statute.  Customs is authorized to enact regulations implementing the statute pursuant to 19 U.S.C. § 1624, which provides that

> "[i]n addition to the specific powers conferred by this chapter the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provision of this chapter."

In addition, 19 U.S.C. § 1313(l) provides that:

> "[a]llowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe, which may include, but need not be limited to, the authority for the electronic submission of drawback entries and the designation of the person to whom any refund or payment of drawback shall be made."

"Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' . . . the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the

enabling legislation.'" Mourning v. Family Publ'g Serv., 411 U.S. 356, 369 (1973) (quoting Thorpe v. Housing Auth. of City of Durham, 393 U.S. 268, 280-281 (1969)). "[A] regulation is reasonably related to the purposes of the legislation to which it relates if the regulation serves to prevent circumvention of the statute and is not inconsistent with the statutory provisions." Carpenter, Chartered v. Sec'y of Veterans Affairs, 343 F.3d 1347, 1351-52 (Fed. Cir. 2003) (citing Thomas Int'l, Ltd. v. United States, 773 F.2d 300, 304-05 (Fed. Cir. 1985).

The regulations at issue are reasonably related to the purpose of the completion requirement of 19 U.S.C. § 1313(r)(1). The regulations serve to prevent circumvention of the drawback statute's three-year period to complete drawback claims. If drawback claimants were not required to provide all information necessary for Customs to process and liquidate drawback entries, such as the amount of drawback due and any necessary amendments to drawback claims, within the statutory three-year period, then Customs could not effectively carry out its duties. Moreover, the strict time limitation set out in 19 U.S.C. § 1313(r)(1) would be circumvented. In addition, the court finds nothing in the regulations that is inconsistent or contrary to the drawback statute.

**CONCLUSION**

Based on the foregoing, the court holds that § 1557(b) of the 2004 Trade Act is subject to the three-year time limitation of 19 U.S.C. § 1313(r)(1).  Accordingly, Customs properly denied Aectra's protest seeking, for the first time, drawback of taxes and fee more than three years from the date of export or destruction.  The court finds no merit to other arguments posed by Aectra.  Aectra's motion for summary judgment is denied, and Customs' motion for summary judgment is granted.  This case is dismissed.  Judgment will be entered accordingly.


Dated:   December 28, 2007
         New York, New York


                              _____/s/ Nicholas Tsoucalas_____
                                 **NICHOLAS TSOUCALAS**
                                 **SENIOR JUDGE**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Before:  Nicholas Tsoucalas, Senior Judge
_____
                                              :
AECTRA REFINING AND MARKETING INC.,           :
                                              :
        Plaintiff,                            :
                                              :
    v.                                        :  Court No.:  04-00354
                                              :
UNITED STATES,                                :
                                              :
        Defendant.                            :
_____:


**JUDGMENT**

    This case having been duly submitted for decision and the court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

    **ORDERED, ADJUDGED and DECREED** that the United States Bureau of Customs and Border Protection properly denied the protest filed by plaintiff Aectra Refining and Marketing Inc. ("Aectra") requesting drawback of taxes and fee for the first instance more than three years after the date of exportation or destruction of the articles on which drawback is claimed; and it is further

    **ORDERED** that the defendant United States' cross-motion for summary judgment pursuant to USCIT R. 56 is granted; and it is further

    **ORDERED** that plaintiff motion for summary judgment pursuant to USCIT R. 56 is denied; and it is further

    **ORDERED** that this case is dismissed.


Dated:  December 28, 2007
        New York, New York


                          _____/s/ Nicholas Tsoucalas_____
                             **NICHOLAS TSOUCALAS**
                               **SENIOR JUDGE**